**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated,
NAPLES, FLORIDA

Plaintiff,

v.

JACKSONVILLE BANCORP, INC.,
7 ST. PAUL STREET, SUITE 820
BALTIMORE, MD 21201

JOHN C. WILLIAMS,
1211 WEST MORTON AVENUE
JACKSONVILLE, ILLINOIS 62650

HARMON B. DEAL, III,
1211 WEST MORTON AVENUE
JACKSONVILLE, ILLINOIS 62650

JOHN L. EYTH,
1211 WEST MORTON AVENUE
JACKSONVILLE, ILLINOIS 62650

RICHARD A. FOSS,
1211 WEST MORTON AVENUE
JACKSONVILLE, ILLINOIS 62650

JOHN M. BUCHANAN,
1211 WEST MORTON AVENUE
JACKSONVILLE, ILLINOIS 62650

ANDREW F. APPLEBEE,
1211 WEST MORTON AVENUE
JACKSONVILLE, ILLINOIS 62650

and

PEGGY S. DAIDSMEYER,
1211 WEST MORTON AVENUE
JACKSONVILLE, ILLINOIS 62650

Defendants.

Case No. ______________

JURY TRIAL DEMANDED

CLASS ACTION

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on January 18, 2018 (the "Proposed Transaction"), pursuant to which Jacksonville Bancorp, Inc. ("Jacksonville" or the "Company") will be acquired by CNB Bank Shares, Inc. ("CNB") and its wholly-owned subsidiary, CNB Acquisition, Inc. ("Merger Sub").

2. On January 17, 2018, Jacksonville's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with CNB and Merger Sub. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Jacksonville's stockholders, they will receive $33.70 in cash for each share of Jacksonville common stock they own.

3. On March 6, 2018, defendants filed a preliminary proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27

of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES AND RELEVANT ENTITIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Jacksonville common stock.

9. Defendant Jacksonville is a Maryland corporation and maintains its executive offices 1211 West Morton Avenue, Jacksonville, Illinois 62650. Jacksonville's common stock is traded on the NASDAQ under the ticker symbol "JXSB." Jacksonville is a party to the Merger Agreement.

10. Defendant John C. Williams ("Williams") is a director, and a Senior Vice President and Trust Officer of Jacksonville.

11. Defendant Harmon B. Deal, III ("Deal") is a director of Jacksonville.

12. Defendant John L. Eyth ("Eyth") is a director of Jacksonville.

13. Defendant Richard A. Foss ("Foss") is a director, and the President and Chief Executive Officer ("CEO") of Jacksonville.

14. Defendant John M. Buchanan ("Buchanan") is a director of Jacksonville.

15. Defendant Andrew F. Applebee ("Applebee") is Chairman of the Board of

Jacksonville.

16. Defendant Peggy S. Davidsmeyer ("Davidsmeyer") is a director of Jacksonville.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Non-Party CNB is an Illinois corporation and is a party to the Merger Agreement.

19. Non-Party Merger Sub is a Maryland corporation, a wholly-owned subsidiary of CNB, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Jacksonville (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action. The Class is so numerous that joinder of all members is impracticable. As of January 17, 2018, there were approximately 1,814,467 shares of Jacksonville common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and

adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

26. On July 14, 2010, Jacksonville completed a conversion from a mutual holding company structure and, after a public offering, now is a stock holding company that is fully owned by the public. Jacksonville wholly owns its savings bank, Jacksonville Savings Bank. On June 28, 2013, Jacksonville Savings Bank terminated its election to be regulated as a savings and loan holding company, and Jacksonville became a bank holding company. The Company's only significant asset is its investment in Jacksonville Savings Bank. At December 31, 2016, Jacksonville had consolidated assets of $319.3 million, total deposits of $258.7 million, and stockholders' equity of $46.2 million.

27. Jacksonville Savings Bank is an Illinois-chartered savings bank headquartered in Jacksonville, Illinois. It conducts its business from its main office and five branches, two of which are located in Jacksonville and one of which is located in the Illinois communities of Virden, Litchfield, and Chapin. Jacksonville Savings Bank was chartered in 1916 as an Illinois-chartered mutual savings and loan association and converted to a mutual savings bank in 1992.

In 1995, Jacksonville Savings Bank converted to a stock savings bank and reorganized into the mutual holding company form of organization.

28. Jacksonville Savings Bank is a community-oriented savings bank engaged primarily in the business of attracting retail deposits from the general public in its market area and using such funds, together with borrowings and funds from other sources, to originate mortgage loans secured by one- to four-family residential real estate, commercial and agricultural real estate, and home equity loans. It also originates commercial and agricultural business loans and consumer loans. Additionally, it invests in United States Government agency securities, bank-qualified, general obligation municipal issues, and mortgage-backed securities issued or guaranteed by the United States Government or enterprises thereof.

29. Jacksonville Savings Bank's principal sources of funds are customer deposits, proceeds from the sale of loans, short-term borrowings, funds received from the repayment and prepayment of loans and mortgage-backed securities, and the sale, call, or maturity of investment securities. Principal sources of income are interest income on loans and investments, sales of loans and securities, service charges, commissions, card interchange income and other fees. Its principal expenses are interest paid on deposits, employee compensation and benefits, occupancy and equipment expense, and data processing and telecommunications expense.

30. Jacksonville Savings Bank also operates an investment center at its main office. The investment center is operated through Financial Resources Group, Inc., Jacksonville Savings Bank's wholly-owned subsidiary.

31. On January 17, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with CNB and Merger Sub. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Jacksonville's stockholders, Merger Sub

will merge with and into Jacksonville, with Jacksonville surviving the merger as a wholly-owned subsidiary of CNB. If the Proposed Transaction is completed, Jacksonville's stockholders will receive $33.70 in cash for each share of Jacksonville common stock they own.

32. On March 6, 2018, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

33. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

34. The Proxy Statement omits material information regarding Jacksonville's financial projections and the valuation analyses performed by Jacksonville's financial advisor in connection with the Proposed Transaction, D.A. Davidson & Co. ("Davidson").

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. The Proxy Statement currently only provides stockholders with the Company's financial projections of net income for the year 2018. It fails to disclose the Company's other financial projections that were relied upon by Davidson in performing its valuation analyses. For example, in its Net Present Value Analysis for Jacksonville Bancorp, the Proxy Statement indicates that Davidson used certain projections of Jacksonville for the years ended December 31, 2019 through December 31, 2023, which were discussed with and confirmed by

Jacksonville management, and applied certain multiples to the Company's projected 2023 tangible book value and earnings. These projections of tangible book value and earnings through 2023, however, were not, but must be, disclosed to stockholders in the Proxy Statement.

37. With respect to Davidson's Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by Davidson in its analysis.

38. With respect to Davidson's Net Present Value Analysis for Jacksonville Bancorp, the Proxy Statement fails to disclose: (i) the Company's projections through year 2023 that were used by Davidson in its analysis; (ii) the specific numerical inputs and assumptions underlying the discount rates calculated and used by Davidson; and (iii) the perpetuity growth rates implied by Davidson's analysis.

39. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Opinion of Jacksonville Bancorp's Financial Advisor; and (ii) Certain Prospective Financial Information Provided by Jacksonville Bancorp.

40. The Proxy Statement omits material information relating to the background leading to the Proposed Transaction and potential conflicts of interest of the Company's executive officers. Jacksonville's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction, and any potential conflicts of interest of Company management or Board members that could have had an impact on their decision to pursue and approve the Proposed Transaction.

41. The Proxy Statement states that, in connection with the Proposed Transaction, CNB has offered continued employment to Chris A. Royal, Jacksonville's Executive Vice

President and Chief Lending Officer, and Diana S. Tone, Jacksonville's Executive Vice President and Chief Financial Officer. Although not disclosed in the Proxy Statement, it is evident that these executive officers were offered post-merger employment during the negotiations leading to the execution of the Merger Agreement, because Section 6.10 of the Merger Agreement provides that: "Concurrently with the execution and delivery of this Agreement, the Company shall deliver to Acquiror amendments to the existing change of control agreements in the form of **Exhibit C** executed by each of Diana Tone and Chris Royal."

42. The Proxy Statement, however, fails to disclose any information with respect to the timing and substance of the discussions regarding these officers' post-merger employment with CNB, including who participated in those conversations. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. The Proxy Statement indicates that, from the middle of 2013 until the execution of the Merger Agreement, several third parties were interested in a potential acquisition or other transaction with the Company. Although four of those parties (identified in the Proxy Statement as Companies A through D) submitted offers to acquire the Company, those offers were either withdrawn by the parties or rejected by the Board. The Proxy Statement, however, fails to disclose the reason those offers were withdrawn or the reason discussions between those parties and the Company terminated.

44. Additionally, the Proxy Statement indicates that, after CNB submitted an acquisition offer to the Company, Davidson reached out to five banks in September 2017, including Companies A through C, to determine whether they were interested in pursuing a

transaction with the Company. The Proxy Statement, however, fails to disclose the reason Davidson or the Company did not reach out to Company D, which had previously submitted an acquisition offer to the Company.

45. Further, throughout the sales process, the Company entered into confidentially agreements with several parties, including four of the banks that Davidson contacted in September 2017. The Proxy Statement, however, fails to disclose the terms of the confidentiality agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prohibit the counterparties from making an unsolicited superior proposal to Jacksonville. This information is particularly important to stockholders, because several parties other than CNB submitted offers for a transaction with Jacksonville.

46. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Financial Interests of Directors and Executive Officers in the Merger.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Jacksonville's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Jacksonville**

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Jacksonville is liable as the issuer of these statements.

50. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

53. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

54. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

**COUNT II**

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of Jacksonville within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Jacksonville and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

60. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 27, 2018

**GOLDMAN & MINTON, P.C.**

By: /S/

Thomas J. Minton (Bar No. 03370)
3600 Clipper Mill Rd., Suite
201Baltimore, MD 21211
(410) 783-7575
*tminton@charmcitylegal.com*

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800